**SIGNED this 6 day of August, 2013.**



_____

John T. Laney, III
**Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case number 08-40118- JTL |
| JEWEL MOORE, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| _____ | ) | |

**Memorandum Opinion**

      This matter comes before the Court on the debtor's Motion for Contempt against the Internal Revenue Service (IRS). At a telephone conference on January 2, 2013, counsel stated they would stipulate to the relevant facts and submit briefs without need for oral argument. The Court has considered the parties' submissions, and the Court will deny the debtor's Motion for Contempt.

**Background**

The debtor filed a Chapter 13 petition on February 5, 2008. On the debtor's
Schedule E—the schedule of creditor's holding unsecured priority claims—the debtor
listed $24,000.00 owing to the IRS for unpaid 2002 and 2003 federal income taxes. The
debtor submitted her 2002 federal income tax return in late October or early November
2007; she submitted her 2003 tax return in August 2007. An attachment to the IRS's
proof of claim classified the unpaid 2002 taxes (plus penalties and interest) as general
unsecured; the unpaid 2003 taxes (plus penalties and interest) were classified as priority.
The IRS classified the 2002 tax debt as general unsecured because the IRS assessed that
year's federal income tax liability after the debtor filed for bankruptcy.[1] The debtor did
not object to the proof of claim. The debtor's Chapter 13 plan, filed on February 5, 2008,
provided for all priority claims to be paid in full and for general unsecured creditors to
receive a 0% dividend. The IRS did not object to the debtor's plan, which the Court
confirmed on April 8, 2008. The IRS filed its proof of claim on March 13, 2008, with an
amendment (making changes inconsequential to the Court's analysis) being filed on May
20, 2008.

On February 14, 2012, the debtor filed a certificate of plan completion and
request for discharge. The clerk's office sent notice of the certification and request to all
scheduled creditors. The notice gave creditors twenty-one days to object to the
certificate's content, and the IRS did not object. The Court entered the discharge order on
March 7, 2012. The order discharged all debts provided for by the plan, excepting
specific types of debt not relevant here. The order also contained a catch-all exception to
discharge stating, "Notwithstanding the provisions of title 11, United States Code, the
debtor is not discharged from any debt made non-dischargeable … by any other
applicable provision of law."

---

[1] Section 507(a)(8)(A)(iii) of the Bankruptcy Code strips the priority status from a postpetition-assessed
federal income tax liability if the tax return is filed late but within two years of the bankruptcy filing date.

On December 3, 2012, the IRS sent the debtor a notice of intent to levy for the unpaid 2002 federal income taxes.[2] The debtor claims that her Chapter 13 discharge order discharged these taxes. Because the IRS's proof of claim classifies the 2002 tax debt as general unsecured and because the discharge order discharged all general unsecured debt, the debtor argues that the Chapter 13 discharge order encompassed the 2002 tax debt. The debtor originally sought a finding of an intentional violation of § 362,[3] an order to immediately cease collection activities, actual damages, punitive damages, and attorney fees, but the debtor does not currently seek damages or fees.

The IRS contends that (1) the Court should not consider the merits of the debtor's argument because the debtor did not exhaust administrative remedies and (2) assuming the Court reaches the merits, the 2002 tax liability is nondischargeable and thus attempting to collect it cannot violate the discharge injunction.

## Conclusions of Law

The IRS claims that the Court cannot reach the merits unless the debtor has first exhausted administrative remedies. It is undisputed that the debtor did not exhaust administrative remedies. The Court will discuss this threshold issue first.

### Exhaustion of Administrative Remedies Under 26 U.S.C. § 7433

The IRS contends that § 7433 of the Internal Revenue Code required the debtor to exhaust administrative remedies within the IRS before petitioning this Court. Subsections (a) and (e) to § 7433 allow taxpayers to bring actions against the United States for certain statutory violations committed by IRS employees. Subsection (a) allows a taxpayer to bring an action for damages against the United States in a district court for disregarding any provision of the Internal Revenue Code. Subsection (e) allows a bankruptcy debtor to petition a bankruptcy court to recover damages against the United States for IRS

---

[2] The IRS also sent a notice of intent to levy for the 2003 taxes, but the debtor concedes that those taxes, and accrued interest, were not discharged.
[3] Although the debtor's motion refers to § 362, which imposes the automatic stay, the code section imposing the discharge injunction is § 524. The Court will hereinafter refer to § 524.

employee violations of the automatic stay and discharge injunction:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to automatic stay) or 524 (relating to effect of discharge) of title 11, United States Code (or any successor provision), or any regulation promulgated under such provision, such taxpayer may petition the bankruptcy court to recover damages against the United States.

26 U.S.C. § 7433(e)(1).

Subsection (b) describes the amount of damages allowed in any action under subsection (a) or petition under (e). See 26 U.S.C. § 7433(b)(1)-(b)(2). Section 7433(d)(1) states, "A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." As noted, subsection (b) refers to petitions under subsection (e), so subsection (d)(1)'s required exhaustion of administrative remedies appears to apply to petitions under subsection (e).

Some courts, however, have concluded that petitions under subsection (e) do not require exhaustion of administrative remedies. Those courts point to § 7433(e)(2)(A), which states, "Except as provided in subparagraph (B), notwithstanding section 105 of such title 11, such petitions shall be the exclusive remedy for recovering damages resulting from such action."[4] If petitions under subsection (e) are the exclusive remedy, these courts state, then there are no other remedies to exhaust. The opinion that appears to be the first to use this reasoning is In re Graham, 2003 WL 21224773 (Bankr. E.D. Va. 2003), which stated,

> [T]here is a provision specifically for bankruptcy violations within § 7433 that does not require that the debtors exhaust administrative remedies. 26 U.S.C. § 7633(e)(2)(A) states that the exclusive remedy for recovering damages for violations of the Bankruptcy Code is to petition the bankruptcy court. There is no mention in 26 U.S.C. § 7433(e), the section devoted exclusively to bankruptcy violations, of the need to exhaust

---

[4] The subparagraph (B) exception is inapplicable here.

administrative remedies. The language is in fact quite clear[:] a petition to the bankruptcy court is the *exclusive* remedy for the violation of Bankruptcy Code provisions."

Id. at *2; see also In re Jha, 461 B.R. 611, 625 (Bankr. N.D. Cal. 2011) (adopting Graham's reasoning); Johnston v. IRS (*In re* Johnston), 2010 WL 1254882, at *5 (Bankr. D. Ariz. 2010) ("The Court also concludes that because of the exclusive remedy language of Section 7433(e)(2)(A), Section 7433(d), which purports to require that no judgment for damages may be obtained in any court for unauthorized collection actions by the IRS against a taxpayer unless the debtor/taxpayer has exhausted his or her remedies, does not apply to a debtor seeking relief under Section 7433(e)(2)(A).").

The weight of authority, however, has held that a debtor must first exhaust administrative remedies.    See, e.g., Kuhl v. U.S., 467 F.3d 145, 147 (2nd Cir. 2006) ("[A]fter exhausting administrative remedies, the taxpayer may petition the bankruptcy court for damages."); Jacoway v. IRS (*In re* Graycarr, Inc.), 330 B.R. 741, 747 (Bankr. W.D. Ark. 2005) (Graham "ignores the precise wording of subsection (b) …. 'Exclusive,' in this instance, can only mean that once the administrative remedies have been exhausted."); Kight v. IRS (*In re* Kight), 460 B.R. 555, 565 (Bankr. M.D. Fla. 2011) ("While § 7433(e) is the exclusive remedy available to a debtor to redress violations of the discharge injunction by the IRS, such remedy is not available to taxpayers unless they first exhaust their administrative remedies within the IRS."); *In re* Cooper, 2011 WL 165830, at *2 (Bankr. M.D.N.C. 2011).

The reasoning of Graham and its progeny has an intuitive appeal in that it seems nonsensical to refer to an exclusive remedy *in addition to* other remedies. But that intuitive appeal is superficial. The majority is correct that on a close reading, there is no way to separate the exhaustion requirement of subsection (d) from petitions under subsection (e). Subsection (d)(1) refers to subsection (b), which refers both to actions under subsection (a) and petitions under subsection (e). Moreover, adopting the minority interpretation of the exclusive-remedy language would render subsection (d)(1)'s

exhaustion requirement surplusage. Subsection (a), which allows a taxpayer to bring an action for damages in district court, also contains an exclusive remedy requirement: "… such civil action shall be the exclusive remedy for recovering damages resulting from such actions." 26 U.S.C. § 7433(a). Both subsections (a) and (e) contain exclusive-remedy language. If actions in district court and petitions in bankruptcy court are exclusive in the sense that exhaustion of administrative remedies is unnecessary, subsection (d)(1)'s exhaustion requirement would be meaningless—it would apply to nothing. Because the majority view is more in line with the statute's text and because the minority view renders the exhaustion requirement surplusage, the Court concludes that a debtor must first exhaust administrative remedies before petitioning this Court under § 7433(e).[5]

The debtor in this case, however, is not petitioning under § 7433(e). As stated above, the debtor does not seek damages. The entire statute presupposes someone seeking damages. Subsection (e)(1) states that a "taxpayer may petition the bankruptcy court to recover *damages* against the United States." 26 U.S.C. § 7433(e)(1) (emphasis added). Subsection (e)(2)(A) states that "such petition shall be the exclusive remedy for recovering *damages* resulting from such actions." 26 U.S.C. § 7433(e)(2)(A) (emphasis added). Subsection (b), titled "Damages," describes the monetary damages available under subsection (e) petitions and subsection (a) actions. Finally, subsection (d)(1) states, "A judgment for *damages* shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1) (emphasis added).

---

[5] Section 7433 was amended in 1998 to add subsection (e). See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685. Two pre-amendment opinions from the United States Court of Appeals for the Eleventh Circuit held that a debtor could get damages from the IRS for violations of the automatic stay and the discharge injunction pursuant to a bankruptcy court's statutory powers under § 105(a) of the Bankruptcy Code. See Hardy v. United States (*In re* Hardy), 97 F.3d 1384, 1388-90 (11th Cir.1996) (discharge injunction); Jove Eng'g, Inc. v. IRS (*In re* Jove Eng'g, Inc.), 92 F.3d 1539, 1553-55 (11th Cir. 1996) (automatic stay).Those portions of the opinions were superseded by the amendment. See Kovacs v. United States (*In re* Kovacs), 614 F.3d 666, 673 (7th Cir. 2010) (recognizing § 7433(e) superseded Jove Eng'g).

Here, the debtor seeks only a finding that the IRS violated the discharge injunction and an order compelling the IRS to cease collection activities.

The IRS, perhaps anticipating this problem with their argument, states, "[A]ny suggestion that administrative exhaustion is not required simply because damages are not sought by a bankruptcy debtor is nonsensical—the statute's underlying policies promoting judicial economy and informal administrative resolution of such controversies would be gutted by allowing suits to enjoin IRS collection of nondischargeable liabilities to proceed simply because such claims are waived." U.S. Mem. Opp'n Debtor's Mot. for Contempt Against IRS at 8, ECF no. 71.  This policy-based argument goes against the plain meaning of the statute, which clearly pertains only to debtors seeking damages. Moreover, this argument is intended to support the contention that the Court should not reach the merits, yet it assumes the conclusion that the IRS has won on the merits—that the debt was not discharged. The debtor claims a confirmed, completed Chapter 13 plan can discharge an otherwise nondischargeable tax debt.  The IRS disputes this. It makes no sense to assume a victory on the discharge issue and then claim policies would be gutted if the Court enjoined collection. If the debt was (as the IRS assumes) not discharged, the Court will not enjoin collection of the debt.

The IRS further claims, "Congress has separately prohibited the type of relief [the debtor] now seeks. 26 U.S.C. § 7421(a) expressly bars suits seeking to enjoin the collection of federal taxes, 26 U.S.C. § 7421, *see Bob Jones Univ. v. Simon*, 416 U.S. 725 (1974), and there is no general exception to the Act under the Bankruptcy Code, *In re heritage Village Church and Missionary Fellowship, Inc.*, 851 F.2d 104, 105 (4th Cir. 1988)." U.S. Mem. Opp'n Debtor's Mot. at 9. Section 7421(a), also known as the Tax Anti-Injunction Act, states in relevant part, "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." The IRS attributes to this statue a scope Congress could not possibly have intended. The debtor

claims the IRS violated the discharge injunction. Whatever limitations § 7421(a) puts on this Court, § 7421(a) does not mean the Court *cannot even reach the merits* of a potential discharge injunction violation by the IRS.[6] Perhaps the IRS is, again, starting from the assumption that the debt was not discharged. If so, then as with the above policy argument, the IRS is assuming a victory on the discharge issue and then using that assumption as a reason for the Court not to consider the merits.  But the Court must reach the merits to determine whether the debt was discharged. If the debt was discharged, the debtor does not owe it to the IRS, and the IRS cannot attempt to collect it; if the debt was not discharged, the debtor would have no right to enjoin the IRS from collecting the debt. Section 7421(a) need not come into play at all. Either the discharge injunction applies to the IRS or it does not.

Case law on the relationship between the Tax Anti-Injunction Act and the Bankruptcy Code is not very helpful due to the paucity of cases relatable to this one. The Court found no cases to support the IRS's argument that the Court cannot hear the merits of an alleged discharge injunction violation by the IRS under these circumstances. The case the IRS cites for the proposition that no general exception to § 7421(a) exists under the Bankruptcy Code is Clark v. United States (*In re* Heritage Village Church & Missionary Fellowship, Inc.), 851 F.2d 104 (4th Cir. 1988). That opinion does indeed say, "There is no express provision in the Bankruptcy Code indicating congressional intent that the Code supersede the Anti-Injunction Act." Id. at 105. In isolation, that statement is broad, but in context it takes on a narrower scope. The bankruptcy court in that case issued a preliminary injunction to keep the IRS from revoking the debtor's tax-exempt status. See id. at 105. The U.S. Court of Appeals for the Fourth Circuit stated that

---

[6] This interpretation would essentially give the IRS a license to ignore the Bankruptcy Code. For example, the automatic stay restrains collection of taxes—the Court would not be able to consider alleged stay violations. And § 505 of the Bankruptcy Code allows bankruptcy courts to determine the amount or legality of any tax. Does that section not apply to the IRS? Or does it apply to the IRS, but the IRS can ignore the determination because a debtor cannot raise a violation due to § 7421(a)'s prohibition against restraining collection of taxes?

the automatic stay did not apply because "revocation of [the debtor's] tax-exempt status is not an 'act to collect, assess, or recover' taxes." Id. Revocation of tax-exempt status is a prerequisite to assessment and collection of taxes—the automatic stay does not apply to these preliminary steps, but the Tax Anti-Injunction Act does. See id. That opinion did not hold anything that supports the IRS's claim in this case.

The discharge injunction is an order of this Court. That this Court can decide whether its orders are being violated is self-evident. The Bankruptcy Code, of course, explicitly gives this Court the authority to hear the merits of this matter. Section 106(a)(2) of the Bankruptcy Code gives bankruptcy courts the authority to hear and determine "any issue arising with respect to the application" of various Bankruptcy Code sections to governmental units.[7] Section 106(a)(3) allows the Court to issue orders against governmental units under those code sections. Among the sections is § 524, which codifies the discharge injunction. Thus the Court can hear and redress violations of the discharge injunction.

As the IRS notes, Section 106(a)(4) requires that such orders be consistent with appropriate nonbankruptcy law, including the Tax Anti-Junction Act. The IRS claims that the Tax Anti-Injunction Act prohibits the relief requested and thus any order providing the relief requested would not conform with the Act. Again, this assumes a victory on the merits of the discharge issue. Nothing in the Tax Anti-Injunction Act states this Court cannot enforce a discharge order.

The Court concludes that it can reach the merits of this alleged discharge order violation. The Court will now turn to the merits.

**Whether the Federal Income Tax Debt Was Discharged**

It is undisputed that the 2002 federal income tax debt is nondischargeable. Section 523(a)(1)(B)(ii) makes nondischargeable taxes for which a return is required (e.g., a

---

[7] The IRS is not exempted from the definition of "governmental units." See 11 U.S.C. § 101(27).

federal income tax) if the return is filed late and within two years of the bankruptcy filing date. It is also undisputed that the tax debt is not entitled to priority status. Section 507(a)(8)(A)(iii) gives priority status to claims for income taxes assessable-but-not-yet-assessed as of the bankruptcy filing date—but not if the tax is "of a kind specified in section 523(a)(1)(B)." The 2002 tax debt, as stated above, is a § 523(a)(1)(B) tax debt, and thus is not entitled to priority.

The IRS's proof of claim for the 2002 income tax debt listed the debt as general unsecured. The proof of claim did not otherwise classify the debt. The debtor argues that the confirmed and completed Chapter 13 plan discharged the 2002 federal income tax debt because the plan provided for the discharge of general unsecured claims. The dispute is whether the discharge of general unsecured claims encompassed the IRS's general unsecured claim for the 2002 income tax. The debtor argues that the facts here are analogous to those in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010) and thus that case is controlling.

**The Supreme Court's Decision in Espinosa**

Generally, a completed Chapter 13 plan discharges all debts provided for in the plan. 11 U.S.C. 1328(a). Section 1328 contains various exceptions to the general rule. Among those exceptions is § 1328(c)(2), which excepts from discharge all unsecured debts specified in § 523(a). Under § 523(a)(8), student loan obligations are nondischargeable unless paying the loan would impose an undue hardship on the debtor and the debtor's dependents. Under Bankruptcy Rule 7001(6), proceedings to determine the dischargeability of a debt are adversary proceedings, and thus a prerequisite to discharging a student loan obligation is an adversary proceeding in which a court makes a finding of undue hardship.

The Chapter 13 plan at issue in Espinosa provided for payment of a student loan's principal amount and a discharge of the interest. See Espinosa, 559 U.S. at 264. The bankruptcy court confirmed the plan without the adversary required by Bankruptcy Rule

7001(6). Id. at 265. The plan itself contained no language stating that the student loan obligation would impose an undue hardship. See Espinosa v. United Student Aid Funds, Inc. (_In re_ Espinosa), 2006 WL 6296057, at *1 (D. Ariz. 2006). The creditor did not object to confirmation of the plan nor did the creditor object to lack of an adversary proceeding. Espinosa, 559 U.S. at 265. The creditor did not appeal the Chapter 13 plan confirmation order. Id. at 264. After the plan was confirmed, the Chapter 13 trustee sent the creditor notice that the amount in the creditor's proof of claim differed from the amount to be paid in the plan; the notice gave the creditor thirty days to notify the trustee if the creditor disputed the claim's treatment. See id. at 265. The creditor did not respond. Id.

After the debtor completed the plan payments, the bankruptcy court entered the discharge order, which was contended to have discharged the student loan interest. Id. at 265-66, 267 n.4. The creditor moved under Federal Rule of Civil Procedure 60(b)(4) to set aside the confirmation order as void.[8] Id. at 266. The Supreme Court held that discharging the student loan obligations without an undue hardship finding was not a jurisdictional error or a due process violation, which are the only two conditions that would render a final judgment void under Federal Rule 60(b)(4). See id. at 271. The creditor did not dispute the court's jurisdiction to enter the order, but the creditor argued that an adversary proceeding—with its attendant summons and complaint—was required for due process. See id. at 272. The Supreme Court disagreed, concluding that actual notice of the plan and its contents "more than satisfied" due process. See id. The Supreme Court declined to expand the types of judgment defects that would support relief under Federal Rule 60(b)(4) to include lack of statutory authority. See id. at 273-

---

[8] Federal Rule of Civil Procedure 60, with modifications not pertinent here, applies to bankruptcy proceedings via Federal Rule of Bankruptcy Procedure 9024. Federal Rule 60(b) lists grounds for relief from a final judgment.

75. Failure to find undue hardship was a legal error, but because the creditor had notice of the error and did not object or appeal, the order remained enforceable. See id. at 275.

On the surface, the holding in Espinosa appears broad because the logic can be extended to other nondischargeable debts. One might conclude that any nondischargeable debt can be discharged through Chapter 13 plan provisions if the creditor holding the nondischargeable claim had notice and did not appeal the confirmation order. However, Espinosa's footnotes eight and ten limit the holding's wider applicability.

Footnote eight states, "Because United brought this action on a motion for relief from judgment under Rule 60(b)(4), our holding is confined to that provision. We express no view on the terms upon which other provisions of the Bankruptcy Rules may entitle a debtor or creditor to postjudgment relief." Id. at 269 n.8. So Espinosa applies *only* to motions under Federal Rule 60(b)(4)—an order confirming a plan with language discharging a nondischargeable debt is not a void order. The holding and logic in Espinosa would not apply, for example, to a motion under Federal Rule 60(b)(1) or (b)(6) asking for relief from a final judgment that is based on a judge's mistake of fact or law.[9]

Footnote ten states,

> Sections 1328(a) and 523(a)(8) provide that student loan debt *is* dischargeable in a Chapter 13 proceeding if a court makes a finding of undue hardship. In contrast, other provisions in Chapter 13 provide that certain other debts are *not* dischargeable under *any* circumstances. *See, e.g.,* §§ 523(a)(1)(B), (C) (specified tax debts); § 523(a)(5) (domestic support obligations); § 523(a)(9) (debts "caused by" the debtor's unlawful operation of a vehicle while intoxicated). We express no view on the conditions under which an order confirming the discharge of one of these types of debt could be set aside as void.

Id. at 273 n.10 (emphasis in original). With this footnote, the Supreme Court eliminated Espinosa's precedential value for the discharge of nondischargeable debts that do not have statutory exceptions to discharge—including § 523(a)(1)(B) tax debts. The debt tax

---

[9] Some courts hold that Federal Rule 60(b) is not intended to provide relief from a court's errors. See e.g., Rodriguez-Antuna v. Chase Manhattan Bank Corp., 871 F.2d 1, 2 (1st Cir. 1989). The Eleventh Circuit Court of Appeals is not one of them. See e.g., Nisson v. Lundy, 975 F.2d 802, 806-07 (11th Cir. 1992) ("Mistakes of judges may be amended under this provision …. This broad language seems to include mistakes of fact as well as mistakes of law ….") (citation omitted).

at issue here is nondischargeable under § 523(a)(1)(B)(ii). The debtor's reliance on Espinosa is misplaced because the Supreme Court did not intend for Espinosa to be precedent as to nondischargeable tax debts.

But the Supreme Court's rationale outside of those footnotes can easily be applied to nondischargeable tax debts. A student loan obligation that does not impose an undue hardship is arguably equivalent to a § 523(a)(1)(B) tax debt—both are unquestionably nondischargeable in bankruptcy. That one of them can be discharged under hypothetical-yet-nonexistent conditions should not interrupt Espinosa's logic. Perhaps if this Court were deciding on a clean slate it would have a tougher decision. But while the Supreme Court expresses no view on debts nondischargeable under any conditions, the U.S. Court of Appeals for the Eleventh Circuit has expressed a view.

This case is clearly controlled by Florida Department of Revenue v. Diaz (*In re Diaz*), 647 F.3d 1073 (11th Cir. 2011). The creditor in that case filed a proof of claim for past due child support for approximately $67,000, an amount comprising both the arrearage on principal and accrued prepetition interest. Id. at 1080. An attachment to the proof of claim showed the past due amount to be about $20,000 less than the amount given in the proof of claim. Id. The attached statement included only arrearage on principal—it did not include interest. Id. The debtor objected to the proof of claim to the extent of the discrepancy. Id. The creditor did not respond, and the bankruptcy court ordered the claim reduced to the amount stated in the attachment, disallowing the rest. Id. The debtor's Chapter 13 plan, which was eventually confirmed, provided for full payment of the allowed amount. Id. The creditor neither objected to the plan  nor appealed the confirmation order. Id. After the debtor completed all plan payments and the bankruptcy case was closed, the creditor attempted to collect the disallowed prepetition interest as well as postpetition interest. Id. at 1081. The bankruptcy court concluded that this violated the discharge injunction and awarded sanctions. Id. at 1081-82.

The Eleventh Circuit disagreed:

> Although "[a] discharge under Chapter 13 is broader than the discharge received in any other chapter[,] Chapter 13 nevertheless restricts or prohibits entirely the discharge of certain types of debts." *United Student Aid Funds, Inc. v. Espinosa*, ⸻ U.S. ⸻, 130 S.Ct. 1367, 1376, 176 L.Ed.2d 158 (2010) (internal citation and quotation marks omitted). Section 1328 of the Bankruptcy Code governs the scope of the discharge in a Chapter 13 case. That section provides, in pertinent part, as follows:
>
>> (a) As soon as practicable after completion by the debtor of all payments under the plan, ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
>>
>>  ....
>>
>> (2) of the kind specified in ... paragraph (5) ... of section 523(a) of this title[.]
>
> 11 U.S.C. § 1328(a)(2) (emphasis added). Thus, § 1328 indicates that a debt of the kind specified in § 523(a)(5) is not discharged by the bankruptcy court's discharge order in a Chapter 13 case. Section 523(a)(5) specifically lists a debt for child support as an exception to discharge. Consequently, as the Supreme Court recently observed, a child-support debt is "*not* dischargeable under *any* circumstances" in Chapter 13 proceedings. *Espinosa*, 130 S.Ct. at 1379 n. 10.
>
> In light of the foregoing, we easily conclude that the bankruptcy court's discharge order did not discharge Diaz's child-support obligation. Therefore, the Florida DOR and Virginia DSS could not have violated the *discharge injunction* by pursuing Diaz for child support after the discharge, and an award of sanctions for violations of the discharge injunction cannot stand.

Diaz, 647 F.3d at 1089-90 (footnote omitted). As the above excerpt indicates, the court clearly found compelling the Supreme Court's statement that certain debts are not dischargeable under any circumstances. The court emphasized that point several times: "Thus, if a creditor holds a child-support debt, then whether the bankruptcy court disallows all, part, or even none of that creditor's claim has no bearing on whether any portion of the debt is discharged—no part of a child-support debt is 'dischargeable under *any* circumstances' in a Chapter 13 case." Id. at 1090 (quoting Espinosa, 559 U.S. at 273

n.10); "Such a debt is *never* dischargeable in a Chapter 13 bankruptcy …." Id. at 1091

n.15. The reasoning as applied to § 523(a)(5) obligations extends to other obligations that

are not dischargeable under any circumstances, including § 523 (a)(1)(B) tax debts.

Espinosa and Diaz are potentially distinguishable in a way helpful to the debtor in

this case. The bankruptcy court in Diaz concluded that because the interest was

disallowed, the completed Chapter 13 plan discharged the interest. Diaz, 647 F.3d at

1090. But disallowance and discharge are separate concepts, and a claim's disallowance

does not necessarily discharge the underlying debt. Id. (citing *In re* Zich, 291 B.R. 883,

886 (Bankr. M.D. Ga. 2003); *In re* Cruz, 277 B.R. 793, 795 (Bankr. M.D. Ga. 2000)).

The bankruptcy court wrongly assumed that the disallowed interest was discharged. Id.

Because the interest was not actually discharged,  the postdischarge collection efforts did

not violate the discharge order. Id. But the student loan interest in Espinosa was not

disallowed—the debtor's Chapter 13 plan explicitly stated that any amounts not provided

for in the play would be discharged upon completion. Espinosa, 2006 WL 6296057, at

*1. In one case the bankruptcy court was wrong about the legal effect of disallowing a

nondischargeable debt.  In the other the bankruptcy court confirmed a Chapter 13 plan

providing for the discharge of a nondischargeable debt. The debtor here claims that his

plan provided for the IRS's debt—the IRS filed a general unsecured claim and the plan

discharged general unsecured debt. The debtor's situation is analogous to that of the

debtor in Espinosa. The language in Diaz, however, is broad enough that this distinction

is irrelevant:

> As relevant to the present case, the Code provision governing a Chapter 13
> discharge compels the conclusion that a child-support debt is not
> discharged *regardless of whether the debt is provided for by the plan or*
> *disallowed.* 11 U.S.C. § 1328(a)(2). Thus, if a creditor holds a child-
> support debt, then whether the bankruptcy court disallows all, part, or even
> none of that creditor's claim has no bearing on whether any portion of the
> debt is discharged—no part of a child-support debt is "dischargeable under
> any circumstances" in a Chapter 13 case. *Espinosa*, 130 S.Ct. at 1379 n.
> 10.

Diaz, 647 F.3d at 1090 (emphasis in original). Thus a child support obligation would not be discharged "regardless of whether the debt is provided for by the plan"—that is, even if the plan specifically provided for a discharge.  Moreover, as the court's recurrent use of emphatic italics strongly suggests, when the court says some debts are not dischargeable under any circumstances, precisely zero exceptions apply. So the cases cannot be distinguished on this basis.

The Court wants to note a seeming tension between Diaz and Espinosa. As just noted, the Eleventh Circuit cited § 1328(a)(2) for the proposition that a child support obligation is not discharged regardless of plan language. See Diaz, 647 F.3d at 1090. That section excepts child support obligations and the taxes at issue here from a Chapter 13 discharge. But that same section excepts from Chapter 13 discharges student loan obligations—which Espinosa said *could* be discharged inconsistently with the Code. Child support obligations, the tax debts in this case, and student loan obligations that do not impose an undue hardship are all always nondischargeable.[10]  The logic underlying Espinosa's analysis of student loan obligations and Diaz's analysis of child support obligations are both applicable to nondischargeable tax debts, yet those opinions arguably compel the opposite conclusion. Under Espinosa, an order discharging a tax debt should not be void—it would be enforceable against the creditor, and the creditor is subject to the discharge injunction.[11]  Under Diaz, nondischargeable tax debts are never dischargeable, and collection efforts would not violate the discharge injunction.

The Diaz opinion does not analyze Espinosa or explain how Espinosa influenced its opinion, so this Court does not know what to make of this apparent tension. The

_____

[10] That student loan obligations are dischargeable under conditions that do not apply is an unpersuasive distinction.

[11] The Court acknowledges that the Supreme Court distinguished student loan obligations, which are sometimes dischargeable, from nondischargeable tax debts, which are never dischargeable. See Espinosa, 559 U.S. at 273 n.10.  Again, that distinction arguably does not change the analysis when the student loan obligations at issue are indisputably not subject to dischargeability.

Eleventh Circuit's decision in <u>Davis v. Florida Department of Revenue (*In re* Davis)</u>, 481
F. App'x 492 (11th Cir. 2012), which involved essentially the same issues as <u>Diaz</u>, does
not shed any light. The court explained its <u>Diaz</u> holding as follows:

> We held that, because domestic support obligations cannot be discharged
> in bankruptcy and because the discharge injunction only applied to
> dischargeable debts, it was not a violation of the bankruptcy court's
> discharge injunction for the Department to pursue a debt owed for a child
> support obligation in state court after the bankruptcy plan was confirmed.

<u>Davis</u>, 481 F. App'x at 494. Again, this logic would appear to apply equally to the
student loan obligation in <u>Espinosa</u> and the tax debt at issue here.

But the <u>Espinosa</u> decision, by its very words, is not binding as to
nondischargeable tax debts. <u>See</u> <u>Espinosa</u>, 559 U.S. at 273 n.10.  The <u>Diaz</u> opinion, on
the other hand, contains reasoning that unreservedly applies to the nondischargeable 2002
federal income tax debt. The Eleventh Circuit's intent that <u>Diaz</u> apply to
nondischargeable tax debt becomes clearer during the court's discussion of res judicata
and collateral estoppel. The court noted that the outcome of claims allowance
proceedings is not an adjudication of the total amount of the debt—it merely fixes the
amount that will be paid through the bankruptcy estate. <u>Diaz</u>, 647 F.3d at 1091. Thus res
judicata and collateral estoppel did not bar the creditor from attempting to relitigate the
amount of the debt because the debt amount was never litigated. <u>Id.</u> The court then
explicitly analogized to nondischargeable-tax cases holding preclusion does not apply to
attempts to "relitigate" the amount the nondischargeable tax debt. <u>See</u> <u>id.</u> at 1091-92
(citing <u>United States v. Gurwitch (*In re* Gurwitch)</u>, 794 F.2d 584, 585 (11th Cir. 1986);
<u>DePaolo v. United States (*In re* DePaolo)</u>, 45 F.3d 373, 376 (10th Cir. 1995); <u>Fein v.
United States (*In re* Fein)</u>, 22 F.3d 631, 633 (5th Cir. 1994)). The court concluded that
discussion as follows:

> Although the cases cited above involved nondischargeable tax
> obligations, the rationale of those cases applies with equal force in the

context of nondischargeable child-support obligations. The holdings of those cases rested on the premise that the plain language of the Bankruptcy Code provides that a discharge "does not fix tax liabilities made nondischargeable under 11 U.S.C. § 523." *In re Gurwitch*, 794 F.2d at 585. The Code similarly makes clear that a Chapter 13 discharge does not fix child-support liabilities made nondischargeable under 11 U.S.C. § 523. See 11 U.S.C. § 1328(a)(2). Accordingly, res judicata and collateral estoppel do not preclude the Florida DOR and Virginia DSS from arguing the extent of Diaz's personal liability for child support post-bankruptcy.

Diaz, 647 F.3d at 1092. Because the reasoning in Diaz applies equally to the 2002 federal income taxes, Diaz is controlling. The debtor's Chapter 13 plan could not have discharged the nondischargeable tax debt.

**Specific Chapter 13 Plan Language at Issue**

"General unsecured creditors whose claims are duly proven and allowed will be paid 0% dividend or a pro rata share of $0.00, whichever is greater." "Notwithstanding the provisions of title 11, United States Code, the debtor is not discharged from any debt made non-dischargeable by … any other applicable provision of law."

The debtor's confirmed Chapter 13 plan did not contain language pertaining to the nondischargeable tax debt. The plan provided for general unsecured creditors to receive nothing, and the discharge order discharged "all debts provided for by the plan." According to the debtor, because the 2002 tax debt is general unsecured, and because the plan provided for general unsecured debts, the discharge order discharged the 2002 tax debt. The problem with this argument, aside from binding authority to the contrary, is that general unsecured debts can also be nondischargeable. Any debt that is not secured or entitled to priority is general unsecured, regardless of whether the debt can be discharged. Nondischargeable debts are, for the most part, general unsecured debts. See § 523(a).

Moreover, a creditor has no obligation to further classify a general unsecured debt as either dischargeable or nondischargeable. The debtor cites no cases supporting the existence of such an obligation, and the official proof of claim form, Official Form 10,

has no box to check or empty line to fill in for nondischargeable debts. The debtor claims that the IRS misled the debtor by filing a general unsecured proof of claim after the IRS had seen the Chapter 13 plan and knew the debtor intended to discharge all general unsecured debt. The IRS, argues the debtor, often designates similar debts as nondischargeable in proof of claim attachments.[12] Putting aside the nonsequitur of the IRS misleading the debtor in these circumstances,[13] the IRS's practice of sometimes further classifying certain debt is just that—a practice. Having done it in the past does not obligate the IRS in the future, nor would the IRS's prior practices preempt code provisions excepting the debt from discharge.

Even assuming no binding precedent, if the Court concluded that the boilerplate plan language pertaining to general unsecured debt applied to the IRS's claim, the discharge order would almost certainly be void as to the IRS's claim. The Supreme Court in Espinosa noted that lack of notice can make a judgment void. See Espinosa, 559 U.S. at 273-74. While the IRS does not have a constitutional right to due process, U.S. v. Cardinal Mine Supply, Inc., 916 F.2d 1087, 1090 (6th Cir. 1990), it is "a basic principle of justice … that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights," U.S. v. State Street Bank & Trust Co. (In re Scott Cable Commc'ns, Inc.), 259 B.R. 536, 543 (D. Conn. 2001). Thus, "courts have construed that the notice requirements of the bankruptcy code apply to 'all creditors,' vesting the government 'with a right akin to due process.'" U.S. v. Hairopoulos (In re Hairopoulos), 118 F.3d 1240, 1244 n.3 (8th Cir. 1997) (quoting In re Interstate Cigar Co., 150 B.R. 305, 309 (Bankr. E.D.N.Y. 1993)). The debtor's Chapter 13 plan could not possibly have

---

[12] The debtor introduced no evidence to support this, but the Court will assume it for the sake of argument.

[13] The debtor proposed her Chapter 13 plan, which was later confirmed without amendment, before the IRS filed its proof of claim, so the debtor could not have been misled into inserting any particular plan provision. To the extent the debtor thought the debt's designation as general unsecured downgraded the debt to dischargeable, the debtor was not misled, but rather mistaken as to the law. The debtor scheduled the debt as priority. She knew the debt would have to be paid at some point. The debtor chose to rely on what she thought was an error by the IRS.

given sufficient notice to the IRS that § 1328(a)(2) would not apply and that the nondischargeable tax debt would be discharged.

## Conclusion

The Court will deny the debtor's Motion for Contempt. The Court will enter an order in accordance with this Memorandum Opinion.